IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHERISH OBERLIES                                                                                      PLAINTIFF


v.                                   CASE NO.        12-2177


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 16, 2010, alleging an onset date of February 21, 2010, due to plaintiff's PTSD and Panic Attacks (T. 131).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on January 21, 2011.  Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 27 years of age and possessed a High School Education (Special Education Classes).  The Plaintiff had past work experience as a kennel tech, maintenance worker, and stocker  (T. 133).

On May 3, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's depression did not meet or equal any Appendix 1 listing.  T. 13.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to " to perform a full range of work at all exertional levels but with the following non exertional limitations: the claimant is limited to work where interpersonal contact with others is incidental to the work performed; where the complexity of tasks is learned and performed by rote, with few variables and little judgment required; and where supervision required is simple, direct, and concrete." T. 15.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform her past relevant work.  T. 18.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Determination of Severe Impairments**

The ALJ found that the only sever impairment the Plaintiff suffered was depression. (T. 13). The Plaintiff contends this was error because she had also been diagnosed with Anxiety Disorder, Personality Disorder, PTSD, and borderline Intellectual Functioning. (ECF No. 12, p.

8).

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985). If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

Dr. Steve Shry performed a Mental Diagnostic Evaluation on the Plaintiff on May 10, 2010 and stated that her estimated intellectual functioning level was "Borderline Range". (T. 231). Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below. (See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 39-40, 684 (4th ed.1994)). The Plaintiff's attorney stated that the Plaintiff had a "special ed diploma" and that she was dyslexic. (T. 31). The Plaintiff testified that she had problems reading and writing and simple math and that she would get help from her mother-in-law or her husband when needed (T. 34). As a result she does not pay any of the bills (T. 35). The Plaintiff stated that she attended special education classes on her initial Disability Report. (T. 132). Dr. Powell in her Functional Capacity Assessment stated that the Plaintiff "has learning disabilities which drastically reduces her ability to work". (T. 261).

A diagnosis of borderline intellectual functioning should be considered severe when the

diagnosis is supported by sufficient medical evidence. *See Nicola v. Astrue,* 480 F.3d 885, 887 (C.A.8 (Iowa),2007) *citing Hunt v. Massanari*, 250 F.3d 622, 625-26 (8th Cir.2001). At Step Four of the Sequential Process the ALJ stated that the "claimant alleges a learning disorder. However, the medical evidence of record fail to establish the existence of a learning disorder. (T. 16). Likewise in discussing the Plaintiff's credibility the ALJ stated that a "review of the claimant's medical treatment records likewise fails to reveal any recorded observations that would suggest mental limitations. " (T. 16). Notwithstanding these findings by the ALJ he seems to have attempted to take into consideration the Plaintiff's intellectual functioning when he provided in the RFC that the Plaintiff's work is limited to "where the complexity of tasks is learned and performed by rote, with few variables and little judgment required; and where supervision required is simple, direct, and concrete." (T. 15).

The court finds that the Plaintiff made a preliminary showing of her BIF by the evidence of Dr. Shry and Dr. Powell. If the ALJ was going to discount their opinions he should have made some effort to develop the record further concerning the Plaintiff's BIF.

**B. Development of the Record**

The Plaintiff next contends that the ALJ failed to properly develop the record by not determining her Intellectual Functioning and a more comprehensive physical evaluation. T. 15.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*,

28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

In this case Dr. Robin L Ross' report only states that the Plaintiff is a High School Graduate (T. 252) and Dr. Gale's Psychiatric Review Technique makes no provision for the Plaintiff's Intellectual Functioning. (T. 242). As pointed out above Dr. Powell, the Plaintiff's treating psychologist, gave opinions that the Plaintiff had "learning disabilities". A treating physician's opinion "is entitled to substantial weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" Perks, 687 F.3d at 1093-94 (quoting *Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir. 1991)). Dr. Powell's opinion seems to be supported by the agency consultive examiner Dr. Shry who stated that the Plaintiff "appears to be function within the Borderline Range intellectually." (T. 231)

In order to discount the opinion of Dr. Powell the ALJ should have obtained another consultive examination that specifically addressed the Plaintiff's Intellectual Functioning.

**C. Step Four**

Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work. *Pate-Fires v. Astrue* 564 F.3d 935, 942 (C.A.8 (Ark.),2009) *citing Steed*

*v. Astrue,* 524 F.3d 872, 875 n. 3 (8th Cir.2008).

When the ALJ questioned the VE concerning the classification of the Plaintiff's past employment the VE testified as follows:

> A. A kennel worker or animal caretaker, let me see if I can find better definition. Now, the only animal caretaker in the DOT is , I can't find a bather and a groomer is skilled but let's use the caretaker DOT number which is 412.674-010 and this is classified as medium. The DOT classifies that as semiskilled but that job description does have a lot of other activities involved for job tasks so I would d reduce the SVP as performed to a 2 as unskilled work."
> (T. 32).

The sum is that the VE testified that there was no DOT classification for the Plaintiff's work as dog bather/groomer. In this case the ALJ determined that the Plaintiff could perform her Past Relevant Work as a "dog bather" (T. 18) but it is unclear that the Plaintiff's past work as a "dog bather" constituted past relevant work. The ALJ had the following dialogue concerning Plaintiff's past employment:

> Q. Now, all right, let's see now you had worked for a company that was a towing company, Steve's Towing and what were you doing? Were you driving or were you–
>
> A. I was answering phones and I told them about my learning disabilities so they told me just to do the best that I can.
>
> Q. And that is to say people would call in, say I needed a tow and you'd take down the information?
>
> A. Yes, sir, the best that I could.
>
> Q. Okay, did Steve's have a shop or did the phone ring at your home?
>
> A. It would be at home.
>
> Q. Did you work more than say, here's a it looks like you might have worked about six months, something like that at an animal shelter?

A. Yes, sir.

Atty: She washed the dogs, Judge

Q. So was it 40 hours a week or would you just come in certain hours of the day and bathe animals?

A. It was 40, because we had, yeah.

Q. Pretty well, 40, okay. Well, I think that's worth profiling.   (T. 30).

"Past relevant work is work that you have done *within the past 15 years,* that was *substantial gainful activity,* and that lasted long enough for you to learn how to do it." *Id.* § 404.1560(b)(1) (emphasis added).  The Regulations define "substantial gainful activity" as "work activity that involves doing significant physical or mental activities, even if done on a part-time basis, and work that is done for pay or profit, whether or not a profit is realized." Id. (citing 20 C.F.R. § 404.1572(a), (b)). Substantial Gainful activity earnings would be presumed for 2005 if the Plaintiff was making $830 per month. (See www.ssa.gov/OACT/COLA).

"Gainful employment," however, does not include "unsuccessful work attempts." *Depover v. Barnhart*; 349 F.3d 563, 566 (8th Cir.2003). "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir.1996).

The regulations state that " We will consider work of 3 months or less to be an unsuccessful work attempt if you stopped working, or you reduced your work and earnings below the substantial gainful activity earnings level, because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work."   20 CFR § 404.1574 (c).

The record indicates that the Plaintiff worked for Animal Friends of the Valley in 2004 and made $4,319. (T. 121).  The court cannot tell from this record whether that constituted one quarter or more of work.  There does not appear to be any way to tell how many months the Plaintiff actually worked for this business.  The court notes that the Plaintiff worked for a different pet service, Vicki and Friends Pet Grooming,  for some period in 2002 and earned $1,231 but again no specific reference is made to the Quarter that the earning refers to or how many months in a particular Quarter were worked. The record does not appear to support the ALJ's conclusion that her pas work as a dog bather/groomer constituted SGA.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this July 24, 2013.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE